Exhibit G

# RELEASE AGREEMENT

This release agreement (the "Agreement") is entered into between FLO CORPORATION and its parent SAFLINK CORPORATION (collectively "FLO"), on the one hand, and VERIFIED IDENTIFY PASS, INC., ("Verified") on the other;

WHEREAS, pursuant to a lawful request made under the Arkansas Freedom of Information Act, Verified obtained a copy of a proposal filed by FLO (the "FLO Proposal") with the Little Rock Municipal Airport Commission (the "Commission"), and FLO's counsel has obtained a copy of a proposal filed by Verified with the Commission (the "Verified Proposal");

WHEREAS, FLO has filed a lawsuit against Verified in San Francisco Superior Court, Case No. CGC-07-463737 (the "California Action");

WHEREAS, FLO requested a temporary restraining order ("TRO") in the California Action which request was denied;

WHEREAS, FLO filed a further lawsuit in the United States District Court for the Eastern District of Arkansas, Case No. 4:07-CV00000541, (the "Arkansas Action") against the Commission in which Verified was granted the right to intervene as a matter of right;

WHEREAS, the Court in the Arkansas Action has dismissed that action;

WHEREAS, Verified and other Registered Traveler service providers have been in discussions conducted by the Registered Traveler Interoperability Consortium ("RTIC") of the American Association of Airport Executives regarding an appropriate and fair transactional cross charging fee when Registered Traveler ("RT") members who were enrolled by one service provider use their cards at RT lanes maintained by a different service provider;

WHEREAS, without in any way admitting any wrongdoing, it is the desire and intent of the parties that all claims relating in any way to the California Action and the Arkansas Action be fully waived and released, as set forth below;

NOW THEREFORE, in consideration of the mutual promises, agreements and covenants contained in this Agreement, and for other valuable consideration, receipt of which is hereby acknowledged, the parties agree to the following:

1. Within two business days of the signing of this Agreement, FLO shall cause a dismissal, with prejudice, to be filed in the California Action.

2. FLO hereby waives and abandons any right that it may have to appeal the dismissal of the Arkansas Action; and further, agrees not to file in state court in Arkansas, or in any other jurisdiction, any action based upon the events alleged in the Arkansas or California Actions, or arising out of, or relating to the claims released by FLO as set forth in paragraph 10 below.

3.  Verified acknowledges and agrees, based on discussions with FLO's President, that it no longer believes that FLO or its senior management acted in bad faith by filing the California and Arkansas Actions and agrees that no Verified employee, agent or representative shall make any public claims to the contrary. Verified further agrees that it will not issue any press release regarding the California Action, the Arkansas Action, or this Release Agreement and that Verified and its employees, agents and representatives shall make no public statements and no statements in a non-public forum to officials of airports or to others involved in the RT industry regarding this dispute contradicting anything in this paragraph. Verified further agrees to instruct all of its employees, agents and representatives to comply with this paragraph.

4.  FLO acknowledges and agrees, now that its senior management have had an opportunity to review the facts surrounding Verified's routine FOIA requests to view proposals submitted to airports for the RT program, that (a) Verified and its senior management have at all times acted honorably and lawfully and in no way have received an unfair advantage in the RT bidding process, and (b) no member or official of the Little Rock Airport Commission acted improperly in conducting the RT proposal process, and further agrees that FLO, Saflink, and their respective employees, agents and representatives shall make no public statement and no statements in a non-public forum to officials of airports or others involved in the RT-industry contradicting anything in this paragraph. FLO agrees that FLO and Saflink will not issue any press release regarding the California Action, the Arkansas Action, or this Release Agreement. FLO further agrees to instruct all of its employees, agents and representatives and those of Saflink associated in any way with the Registered Traveler Group to comply with this paragraph.

5.  The members of the executive team and the board of directors at FLO, with the exception of Fred Fischer, shall be permitted 14 calendar days from the date of signing this Agreement to review the Verified Proposal (the "Review Period"), a copy of which is already in the possession of FLO's counsel.

6.  (a) Within two business days after the expiration of the Review Period, Verified shall return or destroy all hard copies of the FLO Proposal, with the exception of one copy which may be maintained by Verified's counsel, Morrison & Foerster, for the purposes of maintaining a record of this action. Verified further agrees that it shall never review the copy of FLO's proposal in its counsel's possession;

    (b) Within two business days after the expiration of the Review Period, FLO shall return or destroy all hard copies of the Verified Proposal, with the exception of one copy which may be maintained by FLO's counsel, DLA Piper, for the purposes of maintaining a record of this action. FLO further agrees that it shall never review the copy of Verified's proposal in its counsel's possession;

(c) Verified agrees that, within ten business days of the expiration of the Review Period, Verified shall arrange for the segregation of all electronic copies, if any, of the FLO Proposal maintained on its network, hard drives or other electronic media such that no one involved in preparing proposals can access such data.

(d) FLO agrees that, within ten business days of the expiration of the Review Period, FLO shall arrange for the segregation of all electronic copies, if any, of the Verified Proposal maintained on its network, hard drives or other electronic media such that no one involved in preparing proposals can access such data.

7. FLO will be provided with four business days from the signing of this Agreement to make a request to the San Francisco Airport Commission to re-submit the confidentiality designations on its proposal for the Registered Traveler Program for the San Francisco Airport. During that time Verified agrees not to make a FOIA request for the production of FLO's San Francisco Airport proposal.

8. FLO agrees that it will not file any protest, or seek through any proceeding related to an airport RT bidding or proposal process or in any court to disqualify Verified from participating in any bidding or selection process for a Registered Traveler Program or its equivalent for any airport based upon any actions taken by Verified prior to the signing of this Agreement.

9. FLO hereby acknowledges that, to the extent FLO has ever contended or claimed that the RTIC discussions regarding cross charges have been improper in any way, such claim is without merit and FLO shall make no such claim.

10. FLO, on behalf of itself, Saflink, and FLO's successors, assigns, partners, employees, and agents, and any other person or entity claiming by, through or under any of the foregoing, does hereby unconditionally and irrevocably release, waive and forever discharge Verified, and each of its past and present directors, officers, employees, agents, predecessors, successors, assigns, stockholders, partners, insurers, subsidiaries and affiliates, as well as the Little Rock Municipal Airport Commission, and all of its past and present commissioners, directors, officers, employees, agents, predecessors, successors, assigns, stockholders, insurers and affiliates, from any and all claims, demands, damages, judgments, causes of action and liabilities of any nature whatsoever, whether or not known, suspected or claimed, arising out of, or relating in any way to, the California Action, the Arkansas action, any claims that could have been alleged in those actions, any claims relating to obtaining, receiving, reviewing, having knowledge of, or using FLO's Proposal, and any actions taken in connection with the Little Rock Airport Commission Registered Traveler Program bidding or selection process.

11. (a) Subject to the exclusion in paragraph 11(b) below, Verified, on behalf of itself and Verified's successors, assigns, partners, employees and agents, and any other person or entity claiming by, through or under any of the foregoing, does hereby unconditionally and irrevocably release, waive and forever discharge FLO, and each of its past and present directors, officers, employees, agents, predecessors, successors, assigns, stockholders, partners, insurers, subsidiaries and affiliates, including Saflink, from any and all claims, demands, damages, judgments, causes of action and liabilities of any nature whatsoever, whether or not known, suspected or claimed, arising out of, or relating to, (i) the actions or omissions by Fred Fischer taken prior to the signing of this Agreement, and (ii) the filing of the California Action and the Arkansas Action, including but not limited to any claim for attorneys' fees.

(b) The release in paragraph 11(a) above does not apply to Fred Fischer. With respect to Mr. Fischer, Verified, on behalf of itself and Verified's successors, assigns, partners, employees and agents, and any other person or entity claiming by, through or under any of the foregoing, agrees to irrevocably release, waive and forever discharge only its claims for damages against Mr. Fischer for statements made during the April 11, 2007, public hearing before the Leasing Committee of the Little Rock Municipal Airport Commission (the "April 11 Hearing"). Nothing in this agreement shall be construed to be a release of claims against Mr. Fischer for any other acts, and further, Verified expressly reserves the right to use Mr. Fischer's statements during the April 11 Hearing both as grounds for seeking injunctive relief, and as evidence, in any action filed arising out of, or concerning, other conduct by Mr. Fischer.

12. Each party shall be responsible for its own attorneys' fees and costs incurred in connection with the California Action and the Arkansas Action.

13. This Agreement, and any rights, obligations or claims arising from or related to the Agreement, shall be governed by, and construed in accordance with, California law. If any part of this Agreement is held to be invalid or unlawful or unenforceable by a competent court the remainder of the Agreement will remain in full force and effect.

14. This Agreement constitutes the entire understanding and agreement between the parties with respect to this subject matter. It shall not be modified or waived except in a writing signed by each of the parties.

15. The parties agree that the Superior Court of San Francisco and the Northern District of California shall have exclusive jurisdiction to determine any and all disputes between the parties arising from or relating to a breach of this Agreement, and/or its enforcement.

16. The parties agree that in any dispute arising from or relating to a breach of this Agreement, and/or its enforcement, the prevailing party shall be entitled to recovery of its attorneys' fees and costs.

17. This Agreement may be executed by each party separately, in two counterparts, each of which shall be deemed an original. Communication of signature pages may be made by facsimile or electronic transmission.

18. This Agreement shall be binding upon and shall inure to the benefit of the parties and their respective legal representatives, successors and assigns.

This binding Agreement is entered into as of this 14th day of June, 2007.

FLO Corporation and Saflink Corporation

By: _____
Glenn Argenbright, President, FLO Corporation

Verified Identity Pass, Inc.

By: _____
Steven Brill, Chief Executive Officer

Exhibit H

Skip Navigation Bar | Skip to Sidebar | Skip to News Bar

- about BTC
- advocacy
- press room



Tell your CEO about the smartest corporate travel program available.

It sure beats your CEO telling you.

biz travel pubs...

**BTN Breaking News**

**Travel Weekly**

**AirWise News**

**Air Transport World**

**Member Login**

**Forget Password?**

**Join Today!**

**Subscribe to BTC Distribution Lists**

# Business Travel Coalition

*Advocating customer interests since 1994*



_issue centers

- UK Travel Distribution
- Global Travel Distribution Reform

Business Travel Europe

ABTN

Times Online

Business Travel World

Modern Agent

Travel Trade

The Transnational

Management.travel

Canadian Travel Press

Travel Press

Canadian Traveller

Travel Daily News

askBTE

Aviation International

Aviation Today

Business Traveller

Hotel Business

H&M Management

Hotels

Hotel News

Meeting News

MeetingsNet

M&C

Open Jaw

T&E

- Business Travel Issues To Follow in 2007



## the Travelogue difference

Each business morning before 8:30a (EDT) *Travelogue* is published in more than 80 countries. The publication integrates business travel news and analysis from around the world for Members who must follow industry and government developments. Stories are expertly chosen by BTC chairman Kevin Mitchell, rather than by algorithms. Members value the efficiency of accessing important business travel news and trend analysis from around the world in one spot. Read what members say. Only 20 cents a day; subscribe now!

news hubs

Business Travel Coalition

Travel Distribution

Travel Technology

FAA Modernization

Airline Security

Aviation System Security

Registered Traveler

Secure Flight

DHS ATS Watch

Airlines

Open Skies

Green Movement

Climate Management

Travel

Business Travel

Hotels

*Travel Agent*

*Philly News Travel blog*

**Rental Cars**

**Travel Agencies**

**Avian Flu**

**PandemicFlu.gov**

Copyright © 2001 to 2007 by Business Travel Coalition, Inc.