MORRISON & FOERSTER LLP
Jamie A. Levitt
Damion K.L. Stodola
1290 Avenue of the Americas
New York, NY 10104-0050
(212) 468-8000
*Attorneys for Plaintiff Verified Identity Pass, Inc.*

Lori A. Schechter (*pro hac vice* pending)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
(415) 268-7000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VERIFIED IDENTITY PASS, INC., DBA CLEAR REGISTERED TRAVELER,<br><br>                            Plaintiff,<br><br>         -against-<br><br>FRED FISCHER, SAFLINK CORPORATION, and FLO CORPORATION,<br><br>                            Defendants. | Case No. 07 Civ. 6538 (JGK)<br><br>SUPPLEMENTAL AFFIDAVIT OF ALAN E. BRILL IN SUPPORT OF TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION |

STATE OF NEW JERSEY    )
                                : ss.:
COUNTY OF HUDSON     )

        ALAN E. BRILL, being duly sworn, deposes and says:

        1.     I am a Senior Managing Director for Technology Services for Kroll Ontrack. I make this affidavit in further support of Verified Identity Pass, Inc.'s ("Verified") request for a temporary restraining order and preliminary injunction. Unless stated otherwise, I have personal knowledge of the matters stated in this affidavit, and if called as a witness, could testify competently thereto.

        2.     I submit this Supplemental Affidavit, which supplements my affidavit dated July 19, 2007, in reply to defendants' July 31, 2007 opposition to Verified's motion for a temporary

restraining order and preliminary injunction, and to apprise the Court of certain events that have occurred since my prior affidavit.

3. Kroll's investigation is still ongoing and thus, my statements herein, represent only our preliminary findings.

ACCESSING VERIFIED'S NETWORK

4. Defendants do not address Mr. Fischer's February 20, 2007 attempts to log into the Verified Network. In order to access Verified's Network remotely, Mr. Fischer would have been required to go to Verified's web portal at www.verifiedidpass.com, then manually enter in his userID and password, and then click on the "submit" button to gain access to the network. Whether his attempts were successful or not would not alter the sequence of these steps and a record of his attempted access would not have been created through merely an "inadvertent click." The Verified system requires multiple keystrokes before a computer will register as an unsuccessful attempt to access, as the logs reflect from our review.

ACCESSING THE SALESFORCE DATABASE

5. Similarly, it is likely that Mr. Fischer had to take several steps to attempt to access the Salesforce Database. Generally, accessing the Salesforce Database requires one or two keystrokes to get to the website logon page, manual entry of at least the user password (if not also User ID), and a click on the submit key.

6. More specifically, to access the Salesforce Database, it is generally necessary to go to the Salesforce website's customer login screen. This screen can be accessed either by going to www.salesforce.com and then clicking on the Customer Login tab (picture below), or by going directly to the logon screen at https://www.salesforce.com/login.jsp.



2

ny-767832

7.  The login screen looks likes this:

[Login screen screenshot showing User Name and Password fields with Submit button, Remember User Name checkbox, and information for new users about Salesforce accounts]

8.  At the logon screen, Mr. Fischer would likely have manually entered his userID and password. Although the login screen gives the option of automatically filling in the userID, based on the presence, we believe, of a persistent cookie file on Mr. Fischer's computer, it does not allow passwords to be similarly stored. Indeed, Salesforce's website explains this very clearly and states that "we do not store account numbers or passwords in persistent cookies."

> **Cookies:**
> When you interact with the salesforce.com Website we strive to make that experience easy and meaningful. When you come to our Web site, our Web server sends a cookie to your computer. Cookies are files that Web browsers place on a computer's hard drive and are used to tell us whether customers and visitors have visited the Site previously.
>
> Standing alone, cookies do not identify you personally. They merely recognize your browser. Unless you choose to identify yourself to salesforce.com, either by responding to a promotional offer, opening an account, or registering for a 30-day Test Drive, you remain anonymous to salesforce.com. Cookies come in two flavors: session and persistent-based. Session cookies exist only during an online session. They disappear from your computer when you close your browser software or turn off your computer. Persistent cookies remain on your computer after you've closed your browser or turned off your computer. They include such information as a unique identifier for your browser.
>
> Salesforce.com uses session cookies containing encrypted information to allow the system to uniquely identify you while you are logged in. This information allows salesforce.com to process your online transactions and requests. Session cookies help us make sure you are who you say you are after you've logged in and are required in order to use the salesforce.com application. Salesforce.com uses persistent cookies, that only salesforce.com can read and use, to identify the fact that you are a salesforce.com customer or prior salesforce.com Website visitor (whatever the case may be). We are especially careful about the security and confidentiality of the information stored in persistent cookies. For example, we do not store account numbers or passwords in persistent cookies. Users who disable their Web browsers' ability to accept cookies will be able to browse our Website but will not be able to successfully use our Service.

9.  Thus, even if Mr. Fisher's userID were automatically entered, he would still likely have been required to manually enter his password and click on the "submit" button to gain access to the Database. Examination of the records maintained at www.archive.org for the state of the Salesforce website on December 5, 2006 indicate that the method for accessing the Database has not changed since that time. We cannot tell if Mr. Fischer used any cookie on his computer to automatically fill-in his userID, but a forensic examination of his computer could

ny-767832

reveal additional details of his login path for all occasions he attempted, successfully and unsuccessfully, to access the Database.

10.  As set out above, Mr. Fischer's four, separate failed attempts to access the Database, were likely the result of going to a website, entering a userID and password, or at least a password, followed by affirmatively clicking the submit button.

11.  I understand that Mr. Fischer claims he had an "icon" on his laptop toolbar that he may have inadvertently clicked. While an icon that would have allowed Mr. Fischer to avoid the above steps is technologically feasible, my review shows that this is not a standard feature offered by Salesforce, but would instead require a custom software coding "work around." This type of icon would not have been created automatically when a user "initially" accesses the website and enters his "username and password" as Mr. Fischer describes in paragraph 13 of his Declaration. Moreover, unless Mr. Fischer modified the options in his operation system to require a single click to launch an icon, the usual protocol would require him to "double click" on the icon to attempt to access the Salesforce Database. In other words, to invoke the access requires a double click while the cursor is on the icon, and the second click has to occur within a fairly narrow time parameter, otherwise the computer interprets it as two single clicks. A single click selects the item, but does not activate it.

12.  Finally, even if Mr. Fischer did have an icon and inadvertenly launched it four times, he would have received an "access denied" message each time, alerting him to the issue.

13.  A forensic examination of Mr. Fischer's computer, including examination of cache files and internet history logs, could reveal additional details about whether Mr. Fischer used an icon and about his login path for all occasions he attempted to access the Database.

ny-767832

## MR. FISCHER DOWNLOADED PORTIONS OF THE SALESFORCE DATABASE VIA FILE EXPORT AND WEB BROWSER CACHE

**Mr. Fischer's Explanation of Exhibit A is Incomplete**

14. Mr. Fischer suggests that the list he attaches as Exhibit A is the extent of what he took. However, that representation does not explain several findings we discovered during our investigation, following a close and critical examination of Exhibit A.

15. I note that Exhibit A shows that the view being looked at is a report of "all contacts." This is indicated at the top left of page 1 next to "VIEW." As explained below, I determined that the "all contacts" view would have created a report on the website of at least 809 contact records, far more than the 172 listed in Exhibit A. Likewise, as I explain below, the generation of the "all contacts" report would have resulted in the immediate download of a copy of the report into Mr. Fischer's computer cache.

16. Yet, the six pages attached as Exhibit A do not contain all these contacts. This is because Exhibit A is not six web pages, but rather a **single** "web" page. Web pages can be bigger than the screen, and you can use the scroll bar on the side of the screen to move up and down and see the information that does not fit on a single screen. In the case of Exhibit A, the six printed pages represent only one screen. It takes six pages to print because you cannot scroll through a printed page. In this case, the web browser determined that given the amount of data on the screen (and in the files that the browser is displaying) it would require six printed pages to contain all the data. Thus, the one screen prints in the form of six pages. The six numbered pages do not represent the number of pages, but just the amount of paper.

17. Upon closer inspection of Exhibit A, I am led to believe that Mr. Fischer has only submitted a partial print out of the report he generated online. If you look at the top right of page 1 of Exhibit A, you will see that the words "Previous Page" are underlined, indicating the presence of an active hyperlink. This suggests that page 1 of Exhibit A is not in fact page 1 of the report Mr. Fischer generated. The fact that the words "Next Page" are **not** underlined

ny-767832

indicates that no hyperlink is present, suggesting that Exhibit A is, in fact, the **last** page of the report Mr. Fischer generated on-line.

**In addition to Exhibit A, Mr. Fischer Downloaded Contacts**

18. Our investigation reveals that while Mr. Fischer was accessing Verified's Salesforce Database remotely from Internet Protocol (IP) address: 24.167.168.189, he executed a command called a CSVEXPORT which causes a file containing the 14 selected fields listed in paragraph 17 of my earlier affidavit to be created in a ".csv" file format and sent to the computer from which the request came. Once Mr. Fischer had this file, he could open it either directly or by importing it into Excel and printing it. This ".csv" file is **not** Exhibit A attached to Mr. Fischer's declaration. Further forensic examination of Mr. Fischer's computer would be required to determine what precisely Mr. Fischer exported.

19. In any event, this ".csv" file was downloaded to Mr. Fischer's computer in one of two ways. The default installation of Microsoft Office associates a file in ".csv" format with the Excel format. When the file is downloaded, if Mr. Fischer selected "open" from the file downloading dialog, the ".csv" file would be automatically downloaded to a cache directory on his hard drive, and then be opened by Excel as a spreadsheet through automatic import. At this point, Mr. Fischer could have saved, printed or emailed the file in the form of an Excel spreadsheet. Alternatively, if Mr. Fischer had selected "save" from the file downloading dialog, the ".csv" filed would have been saved on Mr. Fischer's computer in a location of his choosing on his hard drive or any other storage device connected to his computer.

20. In addition to exporting any ".csv" file, Mr. Fischer's accessing of the Salesforce Database through his web browser software, would have, by interaction between Salesforce's servers and the web browser, downloaded more than the contents of Exhibit A. To the extent Mr. Fischer viewed other parts of the database on his screen through the Salesforce web connection, copies of those parts would have been downloaded onto his computer, most likely computer's internet cache files directory.

ny-767832

21.    A forensic examination of Mr. Fischer's computer would be required to determine whether any remnants of his Salesforce Database web session and/or ".csv" file are saved.

SIZE OF THE SALESFORCE DATABASE

22.    In light of the size of the Salesforce Database, Mr. Fischer's likely accessed and downloaded much more than the 172 names listed in Exhibit A.

23.    On July 30, 2007, I ran a report to approximate what the Salesforce Database would have contained when Mr. Fischer accessed it on December 5, 2006. This approximation was done by running a report of Salesforce contacts that were created on or before November 28, 2006, which was the date used by Mr. Fischer to generate the exported ".csv" file. My approximation yields all the reports Mr. Fischer had access to minus any records that Verified may have deleted since December 5, 2006.

24.    The report I ran, as described above, contained 809 records. Thus, Mr. Fischer had access to at least 809 records from Verified's Salesforce Database.

_____
Alan E. Brill

Sworn to before me this
1st day of August, 2007

_____
Notary Public

JASON MATTHEW PAROFF
NOTARY PUBLIC
STATE OF NEW JERSEY
MY COMMISSION EXPIRES APRIL 1, 2008